FILED
 2013 Jul-31  AM 11:08
U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **SHERRY ANN MCLAMB,** | } |
| Plaintiff, | } |
| v. | } Civil Action No.: 4:12-CV-2076-RDP |
| **MICHAEL J. ASTRUE,** Commissioner of Social Security, | } |
| Defendant. | } |

### MEMORANDUM OF DECISION

Plaintiff Sherry Ann McLamb brings this action pursuant to Title II and Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 205(g), 1383(c). Plaintiff seeks review of the decision of the Administrative Law Judge (ALJ), denying her claims for disability, disability insurance benefits (DIB), and supplemental security income benefits (SSI). Based on the court's review of the record and briefs submitted by the parties, the court finds that the decision of the ALJ is due to be affirmed.

**I.     Proceedings Below**

On December 30, 2008, Plaintiff filed applications for disability, DIB and SSI. (R. 139-44, 180). Plaintiff's applications were denied initially and upon review. (R. 68-85). She then requested a hearing before an ALJ. (R. 86). Plaintiff's request was granted (R. 106), and ALJ Joseph F. Dent conducted a hearing on June 24, 2010. (R. 20). On August 11, 2010, the ALJ entered his decision denying both applications. (R. 20-30).

Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied on April 4, 2012. (R. 1). As a result of the Appeals Council's denial, the ALJ's decision became the

final decision of the Commissioner and therefore a proper subject of this court's appellate review.

In her applications, Plaintiff alleges she became disabled beginning on December 6, 2006. (R. 179, 183).[1] Plaintiff alleges that she is disabled due to rheumatoid arthritis, lupus, vision impairment[2], and muscle and bone pain. (R. 183). Prior to stopping work in December 2008, Plaintiff worked in an office environment, where she filed daily reports, answered the phone, made copies, and did data entry, credit references, and proofs of delivery. (R. 196-97). The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23). Further, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform her past relevant work as a receptionist or account clerk. (R. 30). Dr. Robert J. Beadles, Jr., an impartial vocational expert (VE), appeared at the hearing. (R. 20, 35). Dr. Beadles testified that Plaintiff could perform her past relevant sedentary work, as long as she did not miss more than one day of work per month. (R. 65-66).

Plaintiff's most notable pre-disability medical visit was her December 2006 surgery for an aneurysm in the right side of her head. (R. 272). She claims that it decreased her short-term memory and exacerbated her vision problem. (R. 183).

During her alleged period of disability, Plaintiff received treatment from several medical professionals. In January 2009, she saw Dr. Thomas Lamkin to address her vision problems. (R. 347-55). Dr. Lamkin noted that her visual field is restricted, yet he indicated that her vision impairment would not prevent her from working. *Id*. That same month Plaintiff also saw her

---

[1] At the hearing, the ALJ granted Plaintiff's motion to amend her onset date of disability to December 12, 2008. (R. 39).

[2] Plaintiff also claims that she suffered short-term memory loss. (R. 183).

treating physician, Dr. Russell, for lupus and headaches. (R. 360-62). Dr. Russell noted that her headache was under "fairly good control" and that her over the counter medicine was useful. With regards to Plaintiff's lupus, Dr. Russell pointed out that she has not had systemic problems since 2006. *Id*.

In February 2009, Plaintiff saw Dr. Charlotte Menzel for a disability examination. (R. 356-59). Dr. Menzel made note of her systemic lupus erythematous, oral mucositis, generalized weakness, and probable mild asthma. *Id*. As to Plaintiff's disability determination, Dr. Menzel opined that her frequent headaches would interfere with a normal work schedule. *Id*. Dr. Menzel's opinion is Plaintiff's main source of evidence supporting her disability claim. (Pl.'s Mem. 5-8). In April 2009, Plaintiff went for a psychological evaluation with Dr. Beth, who found no functional restrictions on her daily activities. (R. 367-72). Plaintiff saw certified nurse practitioner (CRNP) Debora Pullen in February 2010 due to knee and elbow pain, mouth ulcers, rashes, hand numbness, and insomnia. (R. 415-18). CRNP Pullen assessed her lupus erythematous, rheumatoid arthritis, shortness of breath, and fatigue as chronic. In March 2010, Plaintiff returned to CRNP Pullen due to a thyroid problem. (R. 422-25). CRNP Pullen once again noted Plaintiff's chronic lupus erythematous and rheumatoid arthritis, and updated her Tdap vaccine. *Id*.

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant

engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

### III. Plaintiff's Argument for Reversal

Plaintiff presents two arguments for reversal. First, Plaintiff contends that the ALJ improperly discounted Dr. Menzel's opinion. (Pl.'s Mem. 6-8). According to Plaintiff, Dr. Menzel's opinion indicates that she is disabled to the point that she cannot perform any work. (Pl.'s Mem. 7). Second, Plaintiff argues that the ALJ failed to properly consider her pain pursuant to the Eleventh Circuit's three-part pain standard. (Pl.'s Mem. 8-11). Plaintiff claims that her pain alone is enough to render her disabled. (Pl.'s Mem. 11).

### IV. Standard of Review

The only issue before this court is whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's

findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

The ALJ found that Plaintiff has the RFC to perform her past relevant work as a receptionist or account clerk. (R. 30). Plaintiff argues that substantial evidence does not support the ALJ's position, because she is unable to engage in substantial gainful activity. (Pl.'s Mem. 2-4). Plaintiff's first argument is that the ALJ improperly discounted Dr. Menzel's opinion, which states that she is disabled because of her chronic headaches. Plaintiff's second argument is that her pain alone makes her disabled, and that the ALJ failed to recognize this under the Eleventh Circuit three-part pain standard. The court concludes that that the ALJ did not improperly discount Dr. Menzel's opinion, and that Plaintiff's subjective complaints of pain are insufficient to render her disabled.

**A.     Whether the ALJ Improperly Discounted Dr. Menzel's Opinion**

The weight assigned to a medical opinion depends on its consistency with other substantial evidence on the record, the medical source's relationship with the claimant, the evidence the medical source presents to support their opinion, and other factors. *See* 20 §§ C.F.R. 404.1527(c) and 416.927(c). A patient's treating physician's opinion carries extra weight, because treating physicians are best situated to give a complete evaluation of a patient. *See* 20 §§ C.F.R. 404.1527(c)(2) and 416.927(c)(2).

Plaintiff's first argument is that the ALJ should have given Dr. Menzel's opinion greater weight. Dr. Menzel opined that Plaintiff has debilitating headaches, which is consistent with Plaintiff's "extended history of treatment for chronic headaches." (Pl.'s Mem. 7). The court finds this unpersuasive, because Dr. Menzel's opinion conflicts with the record as a whole.

The court concludes that the ALJ was correct to assign little weight to Dr. Menzel's opinion, because it is inconsistent with the record as a whole. Dr. Menzel is the only doctor who believes that Plaintiff has chronic headaches that prevent her from working. All of the other medical findings indicated in the record cut against Dr. Menzel's opinion that Plaintiff's headaches prevent her from working. To be sure, that alone is enough to justify the ALJ discounting Dr. Menzel's opinion. However, there is an additional problem with Dr. Menzel's assessment: it relies substantially on Plaintiff's statements, which the ALJ concluded are not credible. That is, Plaintiff's statements to Dr. Menzel in February 2009 differ greatly from those she made to other physicians, including her treating physician, Dr. Russell. Even if Plaintiff is given the benefit of the doubt with respect to that discrepancy, she has proven herself unreliable on a broader level. Plaintiff made numerous inconsistent statements to her doctors about her job loss, past hobbies, and the severity of her physical impairments. There was clearly substantial evidence to support the ALJ's finding which discounted Dr. Menzel's opinion.

Plaintiff argues that Dr. Menzel's opinion is consistent with other evidence. (Pl.'s Mem. 7). ("[P]laintiff has an extended history of treatment for chronic headaches, as well as lupus and rheumatoid arthritis, from the UAB Moody Health Clinic and the Quality of Life Health Clinic.") *Id*. However, Dr. Menzel's conclusion is merely that Plaintiff's "frequent headaches would interfere with maintaining a normal work schedule. She would otherwise be capable of light work." (R. 359). Therefore, Plaintiff's argument depends solely on whether Dr. Menzel's opinion on Plaintiff's headaches is consistent with the record as a whole, because Dr. Menzel does not claim that her lupus or rheumatoid arthritis prevent her from working. For Plaintiff's disability claim to succeed, her claims about the severity of her headaches must be true, because she "would otherwise be capable of light work."

Plaintiff's statements to Dr. Menzel in February 2009 differ greatly from those she made to other physicians, including her treating physician. As discussed previously, a treating physician's opinion receives extra weight. In January 2009, Plaintiff's treating physician Dr. Russell of the UAB Moody Health Center noted, "[Plaintiff's] headache seems to be under fairly good control. She is taking over-the-counter medicines as needed . . . and that seems to be helpful. No changes need to be made at the present time." (R. 361-62). Plaintiff conceded that her symptoms were not severe when she told Dr. Russell that her headaches were "mild." (R. 361). In fact, her headaches were mild enough that over-the-counter medicine was able to help her. *Id.* Nonetheless, just one month later, Dr. Menzel recorded that Plaintiff's headaches were "chronic." (R. 359).

While it is possible that Plaintiff's headaches worsened greatly in the span of one month, more recent evidence discredits the idea that her headaches constitute a long-term disability. In April 2009, Plaintiff reported to psychologist Dr. Beth that her headaches "are now less intense with less nausea and occur approximately once weekly." (R. 368). Plaintiff does not provide more recent testimony from Dr. Menzel that contradicts this finding. Dr. Menzel never explained why Plaintiff's "less intense" headaches still prevented her from working.

Contrary to Dr. Menzel's opinion and Plaintiff's statements, the record evidence suggests that Plaintiff's headaches have continued to be manageable. Plaintiff has had numerous medical appointments since April 2009, and the records from those appointments do not mention headaches at all. Plaintiff visited CRNP Deborah Pullen in February 2010 to address many of the symptoms that have caused her to claim a disability, yet during that visit she did not mention headaches. (R. 415-18). Plaintiff complained of knee and elbow pain, mouth ulcers, rashes, hand numbness, and insomnia. *Id*. In fact, CRNP Pullen noted rheumatoid arthritis, lupus

erythematous, shortness of breath, and fatigue as chronic problems, but did not list headaches in that category. Plaintiff returned to CRNP Pullen in March 2010 for a thyroid problem, and again did not mention headaches. (R. 422). Finally, in the June 2010 hearing before the ALJ, Plaintiff said that her headaches happened "at least once a month" (R. 41), which suggests that her headaches were not as severe as she previously claimed.

Additionally, there was substantial evidence to allow the ALJ to discount Dr. Menzel's opinion, because it relies on Plaintiff's suspect assertions. (R. 26). As discussed above, Plaintiff's statements about her headaches are inconsistent with each other. This suggests that Plaintiff may have provided Dr. Menzel "less than accurate information" about her headaches. *Id.* Further, Plaintiff's inconsistent statements about her job loss, past hobbies, and physical impairments indicate a general lack of credibility. Plaintiff's lack of credibility could taint any doctor's opinion, to the extent that it relies on her subjective complaints of pain. Plaintiff's lack of credibility will be discussed in the next section as it pertains to the Three-Part Pain Standard.

Plaintiff's also argues that the ALJ mischaracterized (or misunderstood) Dr. Menzel's opinion, and that the ALJ should have contacted Dr. Menzel for further clarification pursuant to 20 C.F.R. §§ 404.1519p and 416.919p. (Pl.'s Mem. 8). ("If the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report.") 20 C.F.R. §§ 404.1519p and 416.919p. This contention lacks merit, because the ALJ had no obligation to contact Dr. Menzel for further clarification. Plaintiff's argument would only be persuasive if the meaning of Dr. Menzel's opinion was unclear. It is perfectly clear what Dr. Menzel thinks; the problem is not a lack of clarity but that her opinion is at odds with the rest of the evidence.

The court concludes that the ALJ's finding discounting Dr. Menzel's opinion is supported by substantial evidence. Dr. Menzel's opinion is inconsistent with the record as a whole, and it relies on Plaintiff's subjective claims, which are not credible.

### B.     Whether Plaintiff Meets the Eleventh Circuit's Three-Part Pain Standard

Plaintiff also asserts that the ALJ erred in finding that her pain does not qualify her for a finding of disability.  The court concludes that the ALJ was correct to disregard Plaintiff's subjective complaints of pain, because he articulated explicit and adequate reasons for disregarding her complaints. Plaintiff repeatedly made inconsistent statements about her ailments, which detracts from her credibility.  The ALJ therefore had substantial evidence to find that Plaintiff's ailments could not reasonably be expected to give rise to the severe pain that she alleged.

To establish disability based upon subjective complaints of pain, a claimant must satisfy the Eleventh Circuit's three-part pain standard. This standard holds that "[t]here must be [1] evidence of an underlying medical condition and [2] there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or [3] the objectively determined medical condition must be of severity which can reasonably be expected to give rise to the alleged pain." *Elam v. Railroad Retirement Board*, 921 F.2d. 1210, 1215 (11th Cir. 1991). If the ALJ wishes to discredit Plaintiff's subjective claims of pain, he must articulate "explicit and adequate" reasons for doing so. *Id*; *Hale v. Bowen* 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff satisfies the first part of the pain standard: as the ALJ acknowledged, there is evidence of an underlying medical condition. Under the second part of the standard, the court has already concluded that objective medical evidence does not confirm the severity of the pain that Plaintiff alleges, because the ALJ correctly concluded that Dr. Menzel's opinion is entitled to

little weight. As a result, Plaintiff must proceed under the third part of the pain standard, by showing that her medical condition is severe enough that it can reasonably be expected to give rise to the pain she alleges.

The ALJ correctly decided that Plaintiff's medical condition was not severe enough to give rise to her alleged pain. The ALJ did not discount Plaintiff's complaints entirely. He noted that Plaintiff "may have to have one unscheduled workday absence per month due to her impairments." (R. 23). The ALJ acknowledged that Plaintiff could only perform a reduced range of sedentary work; however, he concluded that Plaintiff's symptoms were not severe enough to prevent her from working entirely. *Id*.

The ALJ had substantial evidence to conclude that Plaintiff's ailments could not reasonably be expected to give rise to the severe pain that she alleged. Plaintiff's statements are inconsistent with each other, and her complaints to doctors have often been inconsistent with those doctors' actual findings. This suggests that Plaintiff has exaggerated the severity of her ailments. As discussed previously, Plaintiff also has made inconsistent remarks to her doctors about the intensity of her headaches, and given conflicting reports as to why she lost her job and why she quit some of her hobbies. Further, Plaintiff's complaints related to the severity of her arthritis and her vision impairment are inconsistent with what doctors actually found about those ailments.

Plaintiff made inconsistent remarks about why she quit her job. In January 2009, Plaintiff told Dr. Russell and the Social Security Administration respectively, that she lost her job "due to downsizing" (R. 361), and that she was laid off from work because her job was eliminated. (R. 170). However, in February 2009, Dr. Menzel noted that Plaintiff quit working as a bookkeeper because of "some memory difficulties and transportation issues." (R. 358). In still another and

different version of the story, in April 2009, Dr. Beth recorded that Plaintiff merely quit her job in December 2008. (R. 369).

Plaintiff also made inconsistent remarks about why she quit some of her hobbies. In April 2009, Plaintiff told Dr. Beth that she no longer enjoys performing woodwork, yard work, or shooting pool. (R. 368). However, in her June 2010 hearing before the ALJ, Plaintiff stated that she stopped performing woodwork because her impaired vision makes it dangerous for her to do so. (R. 48).

In February 2009, Plaintiff complained to Dr. Menzel of pain in her right elbow, hands, right shoulder, and knees. (R. 357). However, even Dr. Menzel's physical examination of Plaintiff indicates that her symptoms are not as severe as she claims. Dr. Menzel noted that Plaintiff had a normal range of motion in all her joints, including her "cervical and lumbar spine, shoulders, elbows, wrists, joints of hands, hips, knees, ankles and feet." (R. 366). Plaintiff got on and off the examination table without help, and was able to walk 50 yards with Dr. Menzel in her office. (R. 358). Plaintiff could perform a deep knee bend, and she could walk on her toes as well as on her heels. *Id*. Further, Plaintiff was also able to button and unbutton her clothing, despite her complaints of hand pain and arthritis. (R. 26, 358).

Additionally, Plaintiff's complaints about her poor vision are inconsistent with medical findings. Plaintiff claims that her right eye vision impairment makes it difficult for her to drive. (R. 183). Plaintiff also claims an inability to work based upon her right eye vision impairment, in combination with her other alleged ailments. (Pl.'s Mem. 9). Dr. Lamkin noted that Plaintiff's only limitation is that she should avoid activities related to heights. (R. 352). Otherwise, Dr. Lamkin believes that Plaintiff's vision problems impose no restrictions on her work. *Id*. Specifically, Dr. Lamkin noted that Plaintiff is visually capable of "work-related activities such

as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling." (R. 349). This suggests that Plaintiff's claims about her difficulty driving are not credible. On a larger scale, it suggests that Plaintiff's claims are generally not credible.

The court concludes that the ALJ's findings that Plaintiff did not meet the relevant pain standard are supported by substantial evidence. He gave explicit and adequate reasons for disregarding Plaintiff's subjective complaints of pain, finding her repeated inconsistent and exaggerated statements unreliable.

**VI.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with his memorandum of decision will be entered.

**DONE** and **ORDERED** on July 31, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE